**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

*ex rel.* VERITY INVESTIGATIONS, LLC,

*Plaintiff/Relator*,

v.

RAMAPO MANOR NURSING CENTER, INC.,

*Defendant.*

Case No. ____________

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 *et seq.***

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

# *QUI TAM* COMPLAINT

## I. INTRODUCTION

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover $2.0 million (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it and its affiliates met the eligibility requirements for the Small Business Association's ("SBA's") Payment Protection Program ("PPP"). The loan was later forgiven, and the federal government paid the bill.

2. The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. For Second Draw PPP loans, applicants were required to certify that they qualified as "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

5. In their Second Draw loan application, Ramapo Manor Nursing Center, Inc., falsely certified to the SBA that it and its affiliates had 218 employees. As a direct result of that false statement, Defendant obtained a Second Draw PPP loan totaling $2,000,000, which was later forgiven.

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

6. Relator is an outside investigative company that detected Defendant's fraud by reviewing Defendant's and Defendant's affiliates' Form 5500 filings and other evidence about Defendant and its affiliates. That evidence demonstrates that Defendant falsely certified to the SBA that it met the eligibility requirements for the PPP loan it obtained.

## II. THE PARTIES

7. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

8. Defendant Ramapo Manor Nursing Center, Inc. is a New York limited liability company with its principal place of business in Suffern, New York.

## III. JURISDICTION AND VENUE

9. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

10. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

11. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

12. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

13. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

14. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

15. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

16. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

17. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

18. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

19. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

20. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or

demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

21. The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

22. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

23. As of February 12, 2024, courts must assess a civil penalty of no less than $13,946 and no more than $27,894 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

24. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

25. On information and belief, no "public disclosure" has been made of Defendant's false statement and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

26. On information and belief, Defendant's fraudulent transaction has not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

27. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

28. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transaction described herein. Among other things, Relator has "connected the dots" between (a) Defendant's and Defendant's affiliates' Form 5500 filings and other evidence about Defendant, and (b) Defendant's false certifications for a PPP loan.

29. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transaction.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

30. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

31. The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

32. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

33. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

34. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" for purposes of the Second Draw loan as well.[8]

35. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6).[9]

36. That regulation defined affiliation broadly:

a. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

b. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

---

[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

[10] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

[11] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

c. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

d. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

e. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

[12] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[13] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).
[14] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

37. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

38. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

39. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

40. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

41. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. DEFENDANT FALSELY CERTIFIED TO THE SBA ITS COMPLIANCE WITH THE PPP ELIGIBILITY REQUIREMENTS

### A. BACKGROUND: DEFENDANT AND ITS AFFILIATES

42. Defendant Ramapo Manor Nursing Center, Inc. ("Ramapo Manor Nursing"), which was rebranded as The Willows at Ramapo Rehabilitation and Nursing Center, is a New York corporation with its principal place of business located in Suffern, New York.[15]

[15] Ramapo Manor Nursing's Website – Contact Us, https://thewillowsrehab.com/contact-us/.

43. Ramapo Manor Nursing can be validly served with process via its registered agent at 30 Cragmere Rd, Suffern, NY 10901.[16]

44. Ramapo Manor Nursing is a rehabilitation and nursing center which focuses on subacute care and long-term skilled nursing.[17]

45. Since at least 2017, Ramapo Manor Nursing has been operated by CareRite Centers, LLC ("CareRite").[18] CareRite is a healthcare company, registered as a New Jersey limited liability company, headquartered in Englewood Cliffs, New Jersey.[19]

46. CareRite is a healthcare company that operates a network of rehabilitation and nursing care centers.[20]

47. CareRite's 2020 Form 5500 information indicates that the following companies were operated by CareRite and were also affiliates of Ramapo Manor Nursing during the pandemic period:

a. Ramapo Manor Nursing Center, Inc. (The Willows at Ramapo);[21]

b. The Chateau at Brooklyn Rehab and Nursing dba CNH Operating, LLC;

c. Atlantis Operating LLC dba The Phoenix Rehabilitation and Nursing Center;

d. St. James Healthcare Center;

---

[16] New York, Department of State, Division of Corporations, Ramapo Manor Nursing Center (DOS ID 1096841) https://apps.dos.ny.gov/publicInquiry/#search.

[17] Ramapo Manor Nursing's Website– About us, https://thewillowsrehab.com/about/welcome-willows-ramapo-rehabilitation-nursing-center/.

[18] Rockland County Times, *Ramapo Center for Rehabilitation Undergoes Multi-Million Dollar Renovation Project; Renamed The Willows at Ramapo Rehabilitation and Nursing Center*, April 27, 2017, https://rocklandtimes.com/2017/04/27/ramapo-center-for-rehabilitation-undergoes-multi-million-dollar-renovation-project-renamed-the-willows-at-ramapo-rehabilitation-and-nursing-center/.

[19] CareRite's Website – Home, https://careritecenters.com/; New Jersey, Department of Treasury, Division of Revenue and Enterprise, Altus Capital Partners, Inc. (File No. 3548998) https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.

[20] CareRite's Website – Home, https://careritecenters.com/.

[21] CareRite's Website – Centers, https://careritecenters.com/centers/new-york/.

e. Nesconset Acquisition dba Nesconset Center for Nursing and Rehabilitation (The Hamlet Rehabilitation and Healthcare Center at Nesconset);[22]

f. Glen Haven Residential Healthcare Facility 120 beds dba Waters Edge at Port Jefferson;

g. The Grand Pavilion for Rehabilitation and Nursing at Rockville Center;

h. The Glengariff Corporation;

i. 150 Riverside Op LLC dba The Riverside;

j. Cortlandt Operations LLC;

k. HHH Acquisition LLC dba The Grove at Valhalla Rehabilitation;

l. The Paramount at Somers Operating, LLC. Somers Rehab;

m. Chatham Hills Subacute Care Center LLC;

n. Palmetto Subacute Care Center;

o. The Encore at Boca Raton;

p. Gallatin Center for Rehabilitation and Healing;

q. Lebanon Center for Rehabilitation and Healing;

r. Quality Center for Rehabilitation and Healing;

s. Madison Pointe Center (Creekside);

t. Manchester Center for Rehabilitation and Healing;

u. Bethany Center for Rehabilitation and Healing, LLC;

v. Green Hills Center for Rehabilitation and Healing;

w. Nashville Center for Rehabilitation;

---

[22] Newswires' Website, Press Release – *Nesconset Area Skilled Nursing & Rehabilitation Center Joins National Healthcare Organization*, February 7, 2019, https://www.einnews.com/pr_news/475934369/nesconset-area-skilled-nursing-rehabilitation-center-joins-national-healthcare-organization.

x. Trevecca Center for Rehabilitation and Healing, LLC;

y. Bristol at Tampa Rehab and Nursing;

z. Port Chester Operating, LLC;

aa. The Rehabilitation Center at Jupiter Gardens;

bb. Forbes Center for Rehabilitation and Healthcare, LLC;

cc. Highland Operating LLC dba Platinum Ridge Center for Rehabilitation and Healing; and

dd. West Ledge dba Emerald Peek.

48. On information and belief, Ramapo Manor Nursing, CareRite, and the other entities listed in ¶ 47, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

### B. RAMAPO MANOR NURSING'S FALSE STATEMENT TO OBTAIN A SECOND DRAW PPP LOAN

49. In 2020, Ramapo Manor Nursing submitted a borrower application for a First Draw PPP loan in the amount of $2,660,939 by lender Valley National Bank.

50. On or about October 27, 2021, the U.S. government forgave 100% of Ramapo Manor Nursing's First Draw PPP loan, plus interest, in the amount of $2,700,853.08.

51. In 2021, Ramapo Manor Nursing applied for a Second Draw PPP loan.

52. Ramapo Manor Nursing submitted its borrower application form, SBA Form 2483-SD, to Valley National Bank at 615 Main Ave, Passaic, NJ 07055.

53. In its Form 2483-SD, Ramapo Manor Nursing listed its address as 30 Cragmere Rd, Airmont, NY 10901.

54. In its SBA Form 2483-SD, Ramapo Manor Nursing represented that it and its affiliates had 218 employees—under the 300-employee limit needed to be eligible to apply.

55. Ramapo Manor Nursing's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Ramapo Manor Nursing and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

56. Ramapo Manor Nursing deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Ramapo Manor Nursing signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

57. On or about March 12, 2021, Ramapo Manor Nursing was approved for a Second Draw PPP loan in the amount of $2,000,000 by lender Valley National Bank.

58. The U.S. government paid lender Valley National Bank a lender's processing fee of 1% of the $2,000,000 loan, in the amount of $20,000.[23]

59. On or about March 18, 2022, the U.S. government forgave 100% of Ramapo Manor Nursing's Second Draw PPP loan, plus interest, in the amount of $2,020,000.

## C. EVIDENCE OF NUMBER OF EMPLOYEES

60. In its 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

61. In 2020 and 2021, Ramapo Manor Nursing submitted a borrower application for a First Draw and Second Draw PPP loan. In its SBA Forms 2483 and 2483-SD, Ramapo Manor Nursing represented that it and its affiliates had 242 and 218 employees, respectively.

62. As evident in ¶ 47, *supra*, Ramapo Manor Nursing, through CareRite, had numerous other affiliates during the pandemic period.

---

[23] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

63. Relator analyzed 2019, 2020, and 2021 Form 5500 annual reports for employee benefit plans sponsored by Defendant and its affiliates. The filings identify the number of "active participants" in each welfare or retirement plan at the beginning and end of each plan year.

64. "Active participants" in these Form 5500 filings are employees of the sponsor employer who are covered by, or eligible to participate in, the plan. Accordingly, the active-participant counts reported for each affiliate are a conservative proxy for that affiliate's employee headcount in the relevant year.

65. Based on the *available* 2019, 2020, and 2021 Form 5500s of Defendant and its affiliates, it is estimated that Defendant and its affiliates had a 5,334–5,387 employees in 2019, 3,981–4,631 employees in 2020, and 2,215–2,721 employees in 2021, shown as follows:

| Entity | Plan Type | 2019 APs | 2020 APs | 2021 APs |
|---|---|---|---|---|
| CareRite Centers, LLC | 401(k) Plan | 5,334-5,387 | 3,981-4,631 | 2,215-2,721 |

66. Based on the evidence in ¶ 65, *supra*, employee counts of Defendant, and its affiliates, greatly surpassed the 300-employee limit for obtaining a Second Draw PPP loan, and Defendant was, thus, not eligible for the Second Draw PPP loan it obtained.

67. On information and belief, Defendant's payroll records from 2019, 2020, and 2021 will confirm what it always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

68. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

69. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lenders claims for approval of its Second Draw PPP loan.

70. Defendant's knowingly false claims on their respective SBA Form 2483-SD were material to the lender's decision to issue the loan and were material to the SBA's decision to forgive the loan and repay the lender.

71. But for these knowingly false claims, the lender would not have issued the loan, and the SBA would not have forgiven it.

72. The PPP loan obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

73. The PPP loan obtained consisted of money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

74. The Government later reimbursed the lender 100% of the amount of the PPP loan obtained, with interest.

**SECOND CAUSE OF ACTION**

**Creating a False Record or Statement Material to a False Claim**
**31 U.S.C. § 3729(a)(1)(B)**

75. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

76. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made a false record and statement—namely, its SBA Form 2483-SD and its included certifications—to support a false claim submitted to the lender for approval of a Second Draw PPP loan.

77. Defendant's knowingly false records and statement were material to the lender's decision to issue the loan and were material to the SBA's decision to forgive the loan and repay the lender.

78. But for Defendant's knowingly false records and statement, the lender would not have issue the loan, and the SBA would not have forgiven it.

**THIRD CAUSE OF ACTION**

**Improperly Avoiding an Obligation to Pay or Transmit Money**
**31 U.S.C. § 3729(a)(1)(G)**

79. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

80. Defendant violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding their obligation to pay or transmit money to the SBA—namely, the money it received from the SBA in forgiveness for their PPP loan.

81. Defendant knew it improperly received money from the SBA when the SBA forgave their PPP loan.

82. Defendant had an obligation to pay back the SBA the full amount it received in forgiveness of the PPP loan.

83. Defendant knew of its obligation to pay back the SBA.

84. Defendant improperly avoided its obligation to pay back the SBA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C.

§ 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: January 29, 2026

Respectfully submitted,

Steven M. Shepard
Stephen Shackelford, Jr. (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshepard@susmangodfrey.com
sshackelford@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*